**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WISCONSIN**

---

RONALD ALEXANDER,

Plaintiff,

v. Case No. 03-C-0157

UNIFIED SOLUTION,

Defendant.

---

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Ronald Alexander sues his former employer, Unified Solution, Inc. (USI), asserting racial discrimination regarding denial of a pay raise and two promotions. According to the complaint, Alexander, who is African-American, performed the same job as a white man but was paid less; he applied for a supervisor position but the job was given to a white person; and he applied for a shipping and receiving position but the job was given to a white man with less seniority. Alexander's complaint is verified and was filed on February 27, 2003. Attached to the complaint was an Equal Employment Opportunity Commission right-to-sue letter dated February 11, 2003, and a complaint that Alexander had filed with the Equal Rights Division of the State of Wisconsin Department of Workforce Development (the ERD) on April 25, 2002.

USI moves for summary judgment. It argues that the right-to-sue letter attached to the complaint addresses only the pay raise issue, requiring dismissal of the claims of discrimination regarding promotions. Further, it argues that it had legitimate, nondiscriminatory reasons for not promoting Alexander or paying him the same as the white

men he identifies, mainly because he was not qualified for a promotion and because his position was not the same as the man earning more money.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating it is entitled to summary judgment. *Id.* at 323. If this burden is met, the nonmoving party must designate specific facts to support each element of his cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of a factual dispute does not defeat a summary judgment motion; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. Therefore, summary judgment is appropriate against a party who, after adequate time for discovery and in the face of a properly supported summary judgment motion, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. To establish that a question of fact is "genuine," the opposing party must present specific and sufficient evidence

that, if believed by a jury, would actually support a verdict in his favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

UNDISPUTED FACTS

Alexander represents himself in this case. Civil L.R. 56.1(a) states that if a party represents himself in civil litigation and the opposing party files a motion for summary judgment, the movant must: (1) include in the motion "a short and plain statement that any factual assertion in the movant's affidavit(s) or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit(s) or other admissible documentary evidence contradicting the factual assertion"; and (2) provide the text of Fed. R. Civ. P. 56(e)-(f), Civil L.R. 7.1, and Civil L.R. 56.1 and 56.2. The text of Civil L.R. 56.2 is especially important, as it describes the procedures for submitting and objecting to proposed findings of fact. In deciding a motion for summary judgment, the court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is made. Civil L.R. 56.2(e). Therefore, an unrefuted proposed finding is similar to an admission.

Defense counsel satisfied these requirements and adequately warned Alexander of the need to submit evidence in opposition to the summary judgment motion and responses to the defendant's proposed findings of fact. Further, the court highlighted these requirements in a prior order denying defendant's first motion for summary judgment. Nevertheless, Alexander has not submitted any affidavits or admissible evidence in response to defendant's present motion for summary judgment. He filed a "Statement of Undisputed Marterial [sic]

Facts in Support of Motion to Go to Trial," but the document is unsworn, i.e., not signed under penalty of perjury.

The only sworn evidence Alexander has submitted is his verified complaint. A verified complaint should be treated as an affidavit to the extent its factual assertions comply with the requirements for affidavits, i.e., that they are made on personal knowledge, set forth facts admissible in evidence, and show that the affiant is competent to testify to the matters stated. *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996). Although the court prefers the submission of evidentiary material in response to a motion for summary judgment rather than mere reliance on a verified complaint, where a plaintiff represents himself the departure from proper practice is not so egregious as to warrant dismissal of the lawsuit. *Id.*

Nevertheless, Civil L.R. 56.2(e) provides that a party must respond point by point to proposed findings of fact, notwithstanding the submission of affidavits. Under Civil L.R. 56.2(e), because Alexander failed to respond to defendant's proposed findings of fact, the court must conclude that no genuine material issue exists as to those facts. Pro se parties are generally held to the requirements of procedural rules and court orders. *See Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir.)*, amended on other grounds by* 87 F.3d 202 (7th Cir. 1996). However, failure to follow the rules due to innocent misunderstanding or lack of familiarity with the law is usually treated less harshly than conscious disregard or defiance of the rules. *Id.*

Here, the court acknowledges Alexander's pro se status and that he has diligently pursued his case. Further, the court sees no indication that Alexander's failure to comply with Civil L.R. 56.2(e) stems from conscious disregard or defiance of the rule; instead, even though Alexander was sufficiently warned, the court still attributes his failure to lack of

familiarity with the law. Thus, although Alexander failed to submit his own proposed findings of fact or respond to USI's, the court will still consider the evidence submitted in the form of his verified complaint.

However, the factual allegations in the complaint are few. Therefore, unless otherwise noted, the following undisputed facts come from defendant's proposed findings of fact, titled "Statement of Undisputed Material Facts in Support of Motion for Summary Judgment," and the affidavit and documentary evidence backing up the proposed findings, to which Alexander failed to respond with evidence. Only where noted do the facts stated below come from the verified complaint.

Alexander was hired by USI on October 16, 2000, as a Stock Handler I. (Def.'s Stmt. of Undisputed Material Facts ("DSUMF") ¶ 14; Greany Aff. ¶ 2.) At the time he was hired, Alexander's main responsibility was locating and moving products for USI's production lines. (DSUMF ¶ 15; Greany Aff. ¶ 2.)

In March 2002, USI decided to add another warehouse employee in the position of Stock Handler I. (DSUMF ¶ 16; Greany Aff. ¶ 3.) The main responsibilities associated with the new Stock Handler I position would be to load and unload trucks, wrap pallets, and move pallets around the warehouse. (DSUMF ¶ 17; Greany Aff. ¶ 3.) Alexander asked that he be considered for this new position. (DSUMF ¶ 18; Greany Aff. ¶ 4.) On receiving Alexander's request, USI informed him that this would be a lateral transfer and would not result in a pay increase. (DSUMF ¶ 19; Greany Aff. ¶ 4.)

Alexander received the lateral transfer to the new Stock Handler I position as he had requested. (DSUMF ¶ 20; Greany Aff. ¶ 4.) According to the verified complaint, Alexander's transfer took him from the filters (or filtran) department to the Harley Davidson

department. (Compl. at 5, ¶ 1.) Following the transfer, Alexander requested a $2.00 per hour pay increase. (DSUMF ¶ 21; Greany Aff. ¶ 5.) USI then reiterated that Alexander had received a lateral transfer to a different Stock Handler I position and that there was no associated pay increase. (DSUMF ¶ 22; Greany Aff. ¶ 5.) Alexander was being paid commensurate with his job classification, tenure, and the existing point system applicable to hourly employees. (DSUMF ¶ 23; Greany Aff. ¶ 5.)

Todd Steber, Randall Smith, Pat Walker, and Thomas Gott – all identified by Alexander in his Complaint as white men who were paid more than Alexander – each held the position of either Shipping Associate or Receiving Associate. (DSUMF ¶ 24; Greany Aff. ¶ 6; Compl. at 5.) The Shipping Associate and Receiving Associate positions bore increased duties and responsibilities as compared to the Stock Handler I position. (DSUMF ¶¶ 28, 29; Greany Aff. ¶ 10.) The Shipping Associate and Receiving Associate positions required that the employee be able to verify quantity, quality, labeling, and addressing of products and items of merchandise ready for shipment. (DSUMF ¶ 30; Greany Aff. ¶ 10.) The Shipping Associate and Receiving Associate positions required a greater attention to details than the Stock Handler I position because the Shipping Associate was the person making the final check on the accuracy of shipments and the Receiving Associate was the front-line person checking on the accuracy of shipments. (DSUMF ¶ 31; Greany Aff. ¶ 10.) The Shipping Associate and Receiving Associate positions also required greater scan gun capabilities than the Stock Handler I position. (DSUMF ¶ 32; Greany Aff. ¶ 10.) Employees in the Shipping Associate and Receiving Associate positions were required to have all of the skills necessary for the Stock Handler I position in addition to the skills specific to the Shipping Associate and Receiving Associate positions. (DSUMF ¶ 33; Greany Aff. ¶ 10.)

According to USI, the difference between Alexander's pay and the pay of Todd Steber, Randall Smith, Pat Walker, and Thomas Gott was based on the reduced responsibilities associated with the Stock Handler I position held by Alexander as compared to the Shipping Associate and Receiving Associate positions held by Steber, Smith, Walker, and Gott. (DSUMF ¶ 34; Greany Aff. ¶ 11.) According to USI, the only position held by Alexander after his October 16, 2000, hire date was Stock Handler I. (DSUMF ¶ 25; Greany Aff. ¶7.)

However, according to the verified complaint, Alexander was "put into Todd's position" after Todd Steber quit, but was not being paid the same as Steber had been. (Compl. at 5, ¶ 1.) Alexander stated under penalty of perjury that he

> was tran[s]fer[red] to Harely Davison [sic] Department, from the filtran department, a (white American) name[d] Todd came in off the street making $10.00 hour, Todd quit and I was put into his position I work a week, and I ask Management about a pay Raise, I was told to by Management, that my tranfer [sic] was not a promotion it was a lateral move So their's [sic] no pay raise. I believe I was denied a pay raise, because of Race, African American because I did the job just as well as Todd done. The job was never post[ed], no one in the warehouse has ever heard of a lateral move, ever[y] employee that was tranfer [sic] from the filtran department to Harely [sic] department receive a pay raise Pat Walker, Thomas Knott, Randle Smith all white American.

(*Id.*)

According to Mike Greany, USI's Vice President of Corporate Operations, the only promotion Ronald Alexander ever applied for was a supervisor position. (DSUMF ¶ 35; Greany Aff. ¶ 12.) Greany says Alexander was not given the supervisor position because he lacked supervisory experience and qualifications and he made too many errors as a Stock Handler I to entrust him with the increased responsibilities associated with being a supervisor.

(DSUMF ¶ 36; Greany Aff. ¶12.) Alexander says in his verified complaint that the human resources manager, Dana Zahn (or Zahu), told him he was not smart enough to be a supervisor. (Compl. at 7, ¶ 2.)

Greany says Alexander never applied for a Shipping Associate or Receiving Associate position during his employment at USI. (DSUMF ¶¶ 26, 27; Greany Aff. ¶¶ 8, 9.) However, according to Alexander's verified complaint, Alexander did apply to Zahn for a Shipping Associate or Receiving Associate position. (Compl. at 7, ¶ 3.) The day after Alexander turned in his application, Zahn told Alexander that he made more mistakes than anyone in the warehouse. (*Id.*) The promotion was given to Knott. (*Id.*)

On December 10, 2001, Alexander filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission (EEOC). (DSUMF ¶ 2; Breese-Jaeck Aff. Ex. B.) The charge was given the number 260A200213. (DSUMF ¶ 3; Breese-Jaeck Aff. Ex. B at 1.) In charge number 260A200213, Alexander alleged that USI had discriminated against him by denying his application for promotion to supervisor and by promoting someone other than him to shipping clerk without posting the position. (DSUMF ¶¶ 4, 5; Breese-Jaeck Aff. Ex. B at 1-2.)

On April 25, 2002, Alexander filed a separate "Discrimination Complaint" with the ERD, alleging that he had been discriminated against because he was being paid less than a white worker named Todd for doing the same job. (DSUMF ¶ 6; Breese-Jaeck Aff. Ex. C.) Alexander's statement regarding the alleged discrimination reads in its entirety as follows:

> I Ronald Alexander, was tranfer [sic] to Harely Davison [sic] department, from the filters department, a (white American) name[d] Todd came in off the street making $10.00 a[n] hour, Todd quit and I was put in his position, I work a week and I ask Management about a pay raise, I was told to be Management,

> that my tranfer [sic] was not a promotion it was a lateral move so their's [sic] no pay raise. I believe I was denied a pay raise, because of my race, African American, because I do the job just as well as Todd.

(Breese-Jaeck Aff. Ex. C at 1; Compl. Ex. 1.) The ERD complaint did not reiterate the facts or allegations contained in charge number 260A200213 regarding promotions to supervisor or shipping clerk, although at the very end of the complaint regarding relief or settlement requests Alexander stated his belief that USI had denied him a promotion. (DSUMF ¶ 7; *see* Breese-Jaeck Aff. Ex. C at 1-2.) The ERD complaint was given case number 200201647 at the ERD and a separate EEOC charge number of 26GA201278. (DSUMF ¶ 7; Breese-Jaeck Aff. Exs. C, D.)

On July 10, 2002, a "Notice of Right to Sue" was issued on EEOC charge number 260A200213, which had raised the allegations of denial of promotions. (DSUMF ¶ 9; Breese-Jaeck Aff. Ex. E.) This notice warned Alexander that any lawsuit regarding the allegations had to "be filed in federal court *WITHIN 90 DAYS* of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost." (DSUMF ¶ 10; Breese-Jaeck Aff. Ex. E.)

On January 31, 2003, the State of Wisconsin Labor and Industry Review Commission affirmed the decision of the ERD Administrative Law Judge dismissing Alexander's ERD complaint regarding pay disparities because Alexander failed to appear at a hearing on December 17, 2002. (DSUMF ¶ 8; Breese-Jaeck Aff. Ex. D at 1-2.) Following dismissal of the ERD complaint, the EEOC issued a "Dismissal and Notice of Rights," which included a notice of right to sue, on February 11, 2003, regarding charge number 26GA201278. (DSUMF ¶ 13; Breese-Jaeck Aff. Ex. F; Compl. Ex. 2.)

Alexander did not file any federal lawsuit until he filed the present one on February 27, 2003. (Compl. at 1 (date stamp & ¶ 1.A., B.).) Thus, over ninety days passed between the July 10, 2002, Notice of Right to Sue on EEOC charge number 260A200213, relating to the denial of promotions, and the filing of a federal lawsuit. (DSUMF ¶ 12.)

In the present lawsuit, Alexander asserts race discrimination (1) in the pay differential between him, Todd Steber, Pat Walker, Thomas Knott, and Randle Smith, (2) in the failure to promote him to supervisor, and (3) in the failure to promote him to a Shipping Associate or Receiving Associate position. (Compl. at 5, ¶ 1, 7, ¶¶ 2, 3.)

DISCUSSION

A. Alexander's Failure-to-Promote Claims and his Claim Regarding Pay Differences with Walker, Knott, and Smith Must Be Dismissed

A plaintiff must file a federal court action for race discrimination within ninety days of receipt of a right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1); *Velasco v. Ill. Dep't of Human Servs.*, 246 F.3d 1010, 1018 (7th Cir. 2001). Further, the discriminatino claims in the federal court action are limited to those raised in the EEOC claim. *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir.), *cert. denied*, 126 S. Ct. 804 (2005). The complaint filed in federal court and the charge filed with the EEOC must describe the same circumstances and participants to give the EEOC a chance to investigate the allegedly discriminatory conduct alleged. *Id.* An employee cannot complain to the EEOC of only certain instances of alleged discrimination and then seek judicial review of different conduct. *Id.*

The right-to-sue letter attached to Alexander's complaint is that dated February 11, 2003, from EEOC charge number 26GA201278. As USI's evidence indicates, that charge was the same as that in ERD case number 200201647. Nowhere in his brief

responding to USI's motion does Alexander dispute that the ERD charge is that on which the right-to-sue letter was issued in 26GA201278. Thus, the only claim underlying the right-to-sue letter in case number 26GA201278 is that Alexander was doing the same job as Todd Steber but was being paid less. Notwithstanding Alexander's reference at the end of the ERD charge (in his request for relief) to a denial of promotions, nowhere in the ERD charge did Alexander present any facts indicating that he was denied promotion. Further, nowhere in the ERD charge did Alexander allege any facts or make any claim that he was not being paid the same as Walker, Knott, and Smith.

Alexander did assert facts regarding the denial of promotion to supervisor or shipping clerk, in EEOC charge 260A200213, but that was a different EEOC complaint, which resulted in a different right-to-sue letter. The right-to-sue letter regarding these promotions claims was issued on July 10, 2002, and Alexander presents no evidence that his receipt of that right-to-sue was delayed. Thus, Alexander had to file any federal court action on these promotions claims no later than mid-October 2002. Hence, the present action, filed more than seven months after the promotions right-to-sue letter issued, was untimely as to those claims.

*Velasco v. Ill. Dep't. of Human Servs.,* (is right on point regarding Alexander's promotions claims. Velasco originally filed charges of race and gender discrimination with the EEOC and received a right-to-sue letter. Thereafter, she timely filed a complaint in federal court alleging race and gender discrimination, but then voluntarily dismissed the complaint. After the dismissal, Velasco filed a second charge with the EEOC, asserting retaliation and disability discrimination, but *not* race or gender discrimination. She received a second right-to-sue letter and about two months later filed a second complaint in federal court, asserting claims of race and gender discrimination as well as retaliation and disability discrimination.

246 F.3d at 1015-16. The second complaint was filed over one year after the first right-to-sue letter issued. *Id.* at 1016. The district court dismissed the race and gender claims, and Velasco appealed regarding the race discrimination claim. *See id.* at 1016-18. Thereafter, the Seventh Circuit ruled that only the retaliation and disability discrimination claims were timely and upheld dismissal of the race discrimination claim: "[T]he only authorization Dr. Velasco has ever received to bring the claim of race discrimination contained in her second complaint was conferred on May 18, 1998, *over one year prior to her filing of the second complaint.* Her race discrimination count is clearly not timely." *Id.* at 1018.

Alexander's claims of race discrimination in promotions are like Velasco's – they were contained in a previous EEOC charge that resulted in a right-to-sue letter issued more than ninety days before the filing of the pending federal court action. That a second right-to-sue letter later issued regarding other claims in no way revived the claims for which the time for filing had expired.

The claim that Alexander was paid less than white workers Walker, Knott, and Smith similarly was not included in the right-to-sue letter issued on charge 26GA201278. Thus, following *Conner v. Ill Dep't of Natural Res.*, that claim cannot be pursued in this federal lawsuit. Consequently, the two claims regarding denial of promotions and the claim of pay difference as to Walker, Knott, and Smith must all be dismissed.

B. Alexander's Claim of a Pay Difference with Todd Steber Must Be Dismissed

In his complaint, Alexander maintains that the Equal Pay Act was violated. However, the Equal Pay Act, which amended the Fair Labor Standards Act, prohibits only sex discrimination, not race discrimination. 29 U.S.C. § 206(d)(1) ("No employer having employees subject to any provisions of this section shall discriminate . . . between employees

on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex . . . ."); *see Snider v. Belvidere Twp.*, 216 F.3d 616, 619 (7th Cir. 2000) ("The Equal Pay Act prohibits sex-based wage discrimination."). So the Equal Pay Act does not apply here.

Instead, Alexander's claim is one of race discrimination under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer–(1) . . . to discriminate against any individual with respect to his compensation . . . because of such individual's race . . . ."). Such discrimination may be proved directly or indirectly. *Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006).

The direct method requires either direct or circumstantial evidence that the employer was motivated by an impermissible purpose when taking the adverse job action – essentially an admission by the employee that the action was based on race. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Alexander has proffered no evidence sufficient under the direct method and therefore must rely on the indirect method to survive summary judgment.

The indirect method, known as the *McDonnell Douglas* burden-shifting method, allows a plaintiff to first establish a prima facie case of discrimination. If he does so, the burden shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for the adverse employment action. If the employer presents such evidence, the burden shifts back to the plaintiff to provide evidence showing that the employer's given reasons were pretextual. *Scaife*, 446 F.3d at 739-40; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

In its initial brief, USI assumed for argument's sake that Alexander could establish a prima facie case. It argued that it had a legitimate, nondiscriminatory reason for paying Todd Steber a higher wage than Alexander: Steber was a Shipping Associate or Receiving Associate with increased duties and responsibilities as compared to Alexander's Stock Handler I position.[1]

As stated above, the Shipping Associate and Receiving Associate positions required greater attention to details and scan gun capabilities than the Stock Handler I position and ability to verify quantity, quality, labeling, and address products and items ready for shipment. Employees in the Shipping Associate and Receiving Associate positions were required to have all of the skills necessary for the Stock Handler I position in addition to the skills specific to the Shipping Associate and Receiving Associate positions.

It is undisputed that Alexander was not promoted to a Shipping Associate or Receiving Associate position. USI's evidence indicates Alexander was always a Stock Handler I. Alexander's own evidence indicates that he applied for, *but did not get*, the promotion to Shipping Associate or Receiving Associate. Thus, it is undisputed that Steber was a Shipping Associate or Receiving Associate, while Alexander was a Stock Handler I. Therefore, USI has provided a legitimate reason for paying Alexander less than Steber.

To avoid summary judgment, Alexander must show sufficient evidence of pretext such that a rational jury could find in his favor. Pretext means that the defendant's proffered reasons are either lies or completely lacking in factual basis. *Ghosh v. Ind. Dep't of Envtl.*

---

[1]In its initial brief, USI argued only the legitimate reasons and pretext portions of the *McDonnell Douglas* test. However, in its reply brief USI it also added that Alexander cannot establish a prima facie case because he cannot show that he was similarly situated to someone treated better. A reply brief "must be limited to matters in reply." Civil L.R. 7.1(f). Arguments raised for the first time in reply may be disregarded. Therefore, the court has not considered USI's attack on the prima facie case and assumes Alexander can meet it.

*Mgmt.*, 192 F.3d 1087, 1091 (7th Cir. 1999). The pretext inquiry focuses on whether the employer's state reasons are honest, not whether they were wise and well-considered. *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 784 (7th Cir. 2004).

Here, even with the factual statements in his verified complaint, Alexander fails to meet his burden. The undisputed evidence shows that Alexander first transferred from one Stock Handler I position to a new Stock Handler I position, making a lateral move and keeping his same job title. Alexander states in his complaint that Todd Steber quit *after* Alexander's transfer to the Harley Davidson department. Regardless of whether other persons received lateral transfers previously, Alexander was placed in a new Stock Handler I position, not a position as a Shipping Associate or Receiving Associate. Thus, when Alexander was transferred from one department to the other, USI had a legitimate reason for continuing to pay Alexander at the same rate he had been paid before the transfer because he had the same job classification and level.

Taking thes factual statements in Alexander's complaint as true, when Steber quit, Alexander "was put into [Steber's] position" and "did the job just as well." (Compl. at 5, ¶ 1.) But again it is undisputed that Alexander always had the position of Stock Handler I and that he never was promoted to Shipping Associate or Receiving Associate. Thus, at most Alexander's evidence shows that he assumed Steber's job duties but not the job title. That does not save Alexander from summary judgment. The Shipping Associate and Receiving Associate positions required all of the skills of the Stock Handler I position plus additional skills. Thus, even though Alexander performed many or most of the job duties that Steber performed does not show that USI's reasons for paying the men differently were pretextual, as Steber's job overlapped with Alexander's. Also, it is undisputed that the Shipping

Associate and Receiving Associate positions required additional duties and responsibilities above those of a Stock Handler I. Alexander provides no evidence that he assumed *all* of Todd's additional duties and responsibilities.

Nor does Alexander provide evidence that USI is lying. USI provided the affidavit of Vice President Mike Greany. In response, Alexander contends that Greany did not know how racist some of his subordinates, in particular Zahn and Kent Anderson, were. Alexander argues, for instance, that Greany did not know Zahn said Alexander was not smart enough to be a supervisor and made too many mistakes to be a Shipping Associate or Receiving Associate and that in 2000 Zahn had given white workers a pay raise but not African Americans. But lack of knowledge by Greany of all of his subordinates' actions relating to promotions or pay raises in the past does not equate with untruthfulness regarding why the company paid Alexander less than Steber after Steber quit and Alexander took over Steber's job duties.

For the foregoing reasons,

IT IS ORDERED that defendant's motion for summary judgment is granted and this case is dismissed.

Dated at Milwaukee, Wisconsin, this 26th day of July, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge